William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Madison Avenue, 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

| | | |
|---|---|---|
| BEVOLYN DARBY, | : | ECF |
| Individually and on Behalf of All Other | : | 17 Civ. 5370 (RMB) |
| Persons Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | |
| | : | |
| STERLING HOME CARE, INC., MARK R. ZWERGER, | : | |
| MATTHEW G. ANDERSON, MICHELE THOMAS | : | |
| EILEEN KILLEEN, and JOHN DOES #1-10, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------------X

**PLAINTIFF'S MOTION ON CONSENT FOR FINAL APPROVAL OF
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN
AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES
AND REPRESENTATIVE INCENTIVE AWARD**

Dated: August 19, 2019

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078
Attorney for Plaintiffs

5846031

# TABLE OF CONTENTS

Page

I.    INTRODUCTION…………..………………………………………………..    1

II.   TERMS OF SETTLEMENT…………..……………………………………….    4

III.  ARGUMENT……………………………………………………………………    5

    A.    It is Appropriate to Certify the Settlement Class for Purposes
    of the Settlement…………………………………..…………………………….    5

    B.    The Settlement Meets the Standards for Judicial Approval of
    Class Action Settlements and Should Be Approved………………………….    8

    C.    Likelihood of Success at Trial……………………………………….…..    10

    D.    The Range of Possible Recovery and the Recovery Achieved ………………    10

    E.    The Complexity, Expense, and Duration of the Litigation………………….    12

    F.    The Substance and Amount of Opposition to the Settlement……………….    13

    G.    The Stage of Proceedings at Which Settlement Was Achieved……………    13

    H.    The Notice Program Approved by the Court was Effectuated……………….    14

IV.   CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED…………………......    15

    A.    Negotiated Attorney's Fee Agreements Are Favored In
    Class Action Settlements…………………………………………..……………    20

    B.    The Quality of Representation…………………………………………...    22

    C.    The Agreed-Upon Fee Is Reasonable Under a Percentage/Lodestar
    Cross-Check Analysis……………………………………………………………    23

    D.    Class Counsel's Expenses Were Reasonably and Necessarily Incurred…........    27

V.    THE INCENTIVE AWARD AND INDIVIDUAL SETTLEMENT FOR THE NAMED
    PLAINTIFF IS REASONABLE.………..……………………………………………….    27

VI.   CONCLUSION……………….………………………………………………    29

i

# TABLE OF AUTHORITIES

**CASES**                                                                                           **Page(s)**

In re Alloy Inc. Sec. Lit.
     2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004)…………………………………………    18

Amchen Prods. v. Windsor
     521 U.S. 591, 501, 620 (1997)……………………………………………………………    14

In re Am. Bank Note Holographic, Inc. Sec. Litig.
     127 F. Supp. 418 (S.D.N.Y. 2001)………………………………………………………    18

In re Arakis Energy Corp. Sec. Litig.
     199 WL 1021819 (E.D.N.Y. 1999)……………………………………………………    19

Behrens v. Wometco Enterprises, Inc.
     118 F.R.D. 538 (S.D. Fla. 1988), aff'd 899 F. 2d 21 (11th Cir. 1990)……………    8, 12

Berry v. School Dist. of City of Benton Harbor
     184 F.R.D. 93, 98 (W.D. Mich. 1998)…………………………………………………    10

M. Berenson Co. v. Faneuil Hall Marketplace, Inc.
     671 F. Supp. 819, 829 (D. Mass. 1987)…………………………………………………    21

Blanchard v. Bergeron
     489 U.S. 87, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989)………………………………    17

Blum v. Stenson
     465 U.S. 886, 895 n.11,900 (1984)…………………………………………………… 15-17

Cagan v. Anchor Sav. Bank FSB
     1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990)……………………………    12

Carroll v. United Compucred Collections, Inc.
     399 F. 3d 620, 625-626 (6th Cir. 2005)…………………………………………………    6

Chambless v. Masters, Mates, & Pilots Pension Plan
     885 F. 2d 1053, 1058,1059 (2d Cir. 1989)………………………………………………    16

City of Riverside v. Rivera,
     477 U.S. 561 (1986)……………………………………………………………………    17

Cohan v. Columbia Sussex Mgmt., LLC,
     2018 U.S. Dist. Lexis 170192 (Sept. 28, 2018 E.D.N.Y.)…………………………..24, 27

Coleman v. DeFranco Pharmacy, Inc.,

2018 U.S. Dist. LEXIS 129140, 2018 WL 3650017 at *3 (S.D.N.Y. Aug. 1, 2018)..  24

In re Continental Illinois Securities Litigation,
    962 F. 2d 566,568-570 (7th Cir. 1992)……………………………………………..  22

In re Copley Pharmaceutical, Inc.,
    1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998)…………………………………………  24

Cotton v. Hinton,
    559 F. 2d 1326, 1331 (5th Cir. 1977)……………………………………………  8-9

Cowan v. Prudential,
    728 F. 2d 522 (2d Cir. 1991)…………………………………………………….  17

Detroit v. Grinnell Corp.,
    495 F.2d 448, 470 (2d Cir. 1974)………………………………………………….  20

Dolgow v. Anderson,
    472, 494 (E.D.N.Y. 1968)………………………………………………………  21

Dornberger v. Metropolitan Life Ins. Co.,
    203 F.R.D. 118. 125 (S.D.N.Y. 2001)……………………………………………  29

Douglas v. Spartan Demolition Co. LLC,
    2018 U.S. Dist. LEXIS 163387 (Sept. 21, 2018 S.D.N.Y.)………………………….  27

Dunlap-McCuller v. Riese Org.,
    980 F. 2d 153 (2d Cir. 1992)……………………………………………………  17

Fears v. Wilhelmina Model Agency, Inc.,
    2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005)……………………..  28

In re Four Seasons Sec. Laws Litig.,
    58 F.R.D. 19, 36, 37 (W.D. Okla. 1972)…………………………………………  11

Frank v. Eastman Kodak Co.,
    228 F.R.D. 174, 187 (W.D.N.Y. 2005)……………………………………………  27

In re General Motors Corp. Liab. Litig. (GM Pick Up Trucks),
    55 F. 3d 768, 812 813,813-822 (3d Cir. 1995)…………...………………………  15

Gierlinger v. Gleason,
160 F. 3d 858, 882 (2d Cir. 1998)……………………………………………………..  17

Goldberger  v. Integrated Resources, Inc.,
    209 F. 3d 43,47,50,51,53 (2d Cir., 2000)……………………………………..  passim

Grant v. Martinez,
     973 F. 2d 96, 101 (2d Cir. 1997)…………………………………………….....    17

Hanlon v. Chrysler Corp.,
     150 F. 3d 1011 (9th Cir. 1998)…………………………………………………    6

Hensley v. Eckerhart,
     461 U.S. 424, 437 (1983)…………………………………………………………    20

Hicks v. Morgan Stanley & Co.,
     01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *29)
     (S.D.N.Y. Oct. 24, 2005)…………………………………………………………    27

Johnson v. Brennan,
     2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)……    15

Johnson v. Georgia Highway Express, Inc.,
     488 F. 2d 714, 720 (5th Cir. 1974)……………………………………………..    21

In re King Res. Co Sec. Litig.,
     420 F. Supp. 610, 625 (D. Colo. 1976)…………………………………………    9

Lazy Oil Co. v. Witco Corp.
     95 Fed. Supp. 2d 290 (W.D. Pa. 1997)…………………………………………..    11

In re Lloyd's Am. Trust Fund Litig.
     2002 WL 3166577 (S.D.N.Y. Nov. 26, 2002)………………………………… 18, 26

In re Lupron ® Mktg. and Sales Practices Litig.
     No. 01-CV-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14
     (D.Mass. Aug. 17 2005)…………………………………………………………    22

Malchman v. Davis,
     761 F. 2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986)……….    21

Maley v. Del Global Tech. Corp..
     186 F. Supp. 2d 358,369,373 (S.D.N.Y. 2002)…………………………………22, 25, 26

Manners v. American General Life Ins. Co.
     1999 U.S. Dist. LEXIS 22880 at *55 (M.D. Tenn., Aug. 11, 1999)………………    10

Matheson v. T-Bone Rest., LLC
     2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)……………………………………..    15

McBean v. City of New York,
     233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS 5003 (S.D.N .Y.2006)……………    23

iv

McDaniel v. Cnty. of Schnectady
     595 F.3d 411 (2d Cir. 2010)……………………………………………………    15

McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, et al.
     450 F.3d 91 (2d Cir. 2006)………………………………………………    16

Miele v. New York State Teamsters Conference Pension & Ret. Fund,
     831 F. 2d 407, 409 (2d Cir. 1987)………………………………………    16

In re NASDAQ Market-Makers Antitrust Litig.
     187 F.R.D. 465, 484,485,489 (S.D.N.Y. 1998)…………………………………17-18, 26

Orchano v. Advanced Recovery, Inc.,
     107 F. 3d 94, 98-99 (2d Cir. 1997)………………………………………    17

In re Orthopedic Bone Screw Products Liab. Litig.,
     176 F.R.D. 158, 185 (E.D. Pa. 1997)……………………………………    13

In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,
     148 F. 3d 283,318,319 (3rd Cir. 1998)……………………………………......    6

In re Prudential Sec. Inc. Ltd., P'ships Litig.,
     985 F. Supp. 410, 417  (S.D.N.Y. 1997)……………………………………...    12

Quartino v. Tiffany & Co.,
     166 F. 3d 422,426 (2d Cir. 1999)………………………………………..    17

Ressler v. Jacobson,
     822 F. Supp. 1551, 1553 (M.D. Fla. 1992………………………………………    10

In re RJR Nabisco, Inc. Sec. Litig.
     No. 88 Civ. 7905 (MBM), 1992 WL 210138,
     (S.D.N.Y. Aug. 24 1992) 1992 U.S. Dist. LEXIS 12702……………...…………18,20,26

Ruiz v. McKaskle
     724 F. 2d 1149 (5th Cir. 1984)………………………………………….…    9

Siegel v. Bloomberg L.P.,
     2016 U.S. Dist. LEXIS 38799 at *5-*6 (S.D.N.Y. Mar. 22, 2016)…………………    26

Spann v. AOL Time Warner,
     02 Civ. 8238 (DLC) (S.D.N.Y., 2005)………………………………………17, 28

Steiner v. Williams,
     99 Civ. 10186 (JSM),  2001 WL 604035 (S.D.N.Y. 2001)…………………………    17

Strougo v. Bassini
    258 F. Supp. 2d 358 (S.D.N.Y. 2002)……………………………………………..  17

Susquehanna Corp. v. Korholz
    84 F.R.D. 316, 322 (N.D. Ill. 1979) …………………………………………...  9

TBK Partners, Ltd. v. Western Union Corp.,
    675 F. 456, 463-64 (2d Cir. 1982)………………………………………………..  11

Teachers' Ret. Sys. v. A.C.L.N., Ltd.,
    Master File No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11
    (S.D.N.Y. May 14, 2004)…………………………………………………………..  19

In re Twinlab Corp. Sec. Litig.,
    187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002)………………………………………..  18

In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,
    724 F. Supp. 160 (S.D.N.Y. 1989)…………………………………………....  18

In re United States Oil and Gas Litig.,
    967 F. 2d 489, 493 (11th Cir. 1992)……………………………………………  8

Velandia v. Serendipity 3, Inc.,
    2018 U.S. Dist. Lexis 116594 (July 12, 2018 S.D.N.Y.)………………………..  26

Villanueva v. 179 Third Avenue Rest Inc.,
    2018 U.S. Dist. LEXIS 116379 at *8 (July 12, 2018 S.D.N.Y.)……………......  26

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
    396 F.3d 96, 121 (2d Cir. 2005)………………………………………………  24

In re Warner Comms.Sec. Litig.,
    618 F. Supp. 735, 749 (S.D.N.Y. 1985)………………………………………..  23

Weiss v. Mercedes-Benz of N. Am. Inc.,
    899 F. Supp. 1297, 1304 (D.N.J. 1995), aff'd 66 F.3d 314 (3d Cir. 1995)…………  26

Whitford v. First Nationwide Bank
    147 F.R.D. 135 (W.D. Ky. 1992)………………………………………………..  10

Williams v First Nat'l Bank,
    216 U.S. 582, 585 (1910)………………………………………………………..  8

Willix v. Healthfirst, Inc.,
    2011 U.S. Dist. LEXIS 21102, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)………  25

In re Worldcom, Inc. ERISA Lit.,
    339  F. Supp. 2d 561 (S.D.N.Y. 2005)……………………………………..   17

Young v. Katz
    447 F. 2d 432, 433 (5th Cir. 1971)……………………………………..   9

Zhi Li Zhong v. Rockledge Bus Tour Inc.,
    18 Civ. 454 (RA), 2018 U.S. Dist. LEXIS 131829, 2018 WL 3733951
    (S.D.N.Y. Aug. 6, 2018)……………………………………………………   24

## STATUTES, RULES AND REGULATIONS

Class Action Fairness Act
28 U.S.C. § 1712 (b) (2)……………………………………………………   3, 14

Fair Labor Standards Act (FLSA)…………………………………………   passim

Federal Rules of Civil Procedure
Rule 23.. …………………………………………………………………..   passim

29 U.S.C.  §216 (b)………………………………………………………..   16

N.Y. Lab. Law §198………………………………………………………….   16

**PLAINTIFF'S MOTION ON CONSENT FOR FINAL APPROVAL OF
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN AWARD OF
ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND
REPRESENTATIVE INCENTIVE AWARD**

Under Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff BEVOLYN DARBY

("Plaintiff" or "Named Plaintiff") applies to this Court for Final Approval of Settlement,

Certification of Settlement Class, An Award of Attorney's Fees and Expenses and a

Representative Incentive Award in this class action wage litigation as more specifically set forth

previously in Plaintiffs' Application for Preliminary Approval ("Plaintiffs' Motion for

Preliminary Approval"). Defendants STERLING HOME CARE, INC., MARK R. ZWERGER,

MATTHEW G. ANDERSON, MICHELE THOMAS, EILEEN KILLEEN (collectively

"Defendants"), consent to this application.


I.      INTRODUCTION

Plaintiff, who was a home health aide, commenced the Litigation by filing a

complaint in the United States District Court for the Southern District of New York on July 15,

2017, in which Plaintiff asserted claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29

U.S.C. § 201, et seq. and the New York Labor Law ("Labor Law") and New York contract law,

alleging, *inter alia*, failure to pay minimum wages and overtime, failure to pay for the full 24 hours

worked by employees who worked 24-hour live in shifts, failure to pay for travel time between

clients, and failure to provide proper notices under the Wage Theft Prevention Act. The Named

Plaintiff also alleged that she did more than 20% maid's work and thus was entitled to overtime

prior to January 1, 2015 and also did not get meal breaks or 5 hours of uninterrupted sleep or 8

hours of sleep during her live in 24-hour shifts and thus was entitled to wages for the 11 hours

improperly deducted from each 24-hour shift. The Named Plaintiff brought the action as a

collective action under the FLSA and a class action pursuant to Rule 23 of the Federal Rules of

1

Civil Procedure with regard to the New York Labor Law claims and contract claims. Defendants answered the Complaint in this action on August 28, 2017, and unequivocally denied any liability or wrongdoing. Defendants have also indicated that they intended to vigorously defend themselves against the claims if the Parties were not able to effectuate a fair and reasonable settlement. Defendants continue to deny any liability or wrongdoing of any kind whatsoever associated with the claims alleged in this action, and nothing contained herein shall be deemed a presumption, concession or admission by Defendants of any liability or wrongdoing as to any facts or claims alleged or asserted in this action.

On January 30, 2018, the Court conditionally certified a collective under the FLSA of health aides who worked between January 1, 2015 and October 13, 2015 who were not paid full time and one half for their overtime hours. On March 20, 2018, a notice was mailed out to 359 persons and 67 persons opted into the action as collective action plaintiffs.

Prior to entering into the Settlement Agreement, Plaintiffs' Counsel conducted an investigation relating to the events and transactions underlying Plaintiffs' claims. Plaintiffs' Counsel's decision to enter into this Settlement Agreement was made with knowledge of the facts and circumstances underlying Plaintiffs' claims and the strengths and weaknesses of those claims. In determining to settle the Action, Plaintiffs' Counsel has analyzed the evidence adduced during pretrial proceedings and settlement negotiations, and has taken into account the substantial expense and length of time necessary to prosecute the litigation through class certification, trial, post-trial motions and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation. Plaintiffs' Counsel believes that the Settlement described herein confers substantial benefits upon the Class Members. Based upon consideration of these factors, and others, Plaintiffs' Counsel has concluded that it is in the best interest of Plaintiffs, and

the Class Members to settle the Action on the terms described herein, and that such Settlement is fair, reasonable and adequate to the Class.

Plaintiffs' Counsel believes that if the Action were not settled, and (1) the Court certified the Action as a class action over Defendants' opposition, (2) the Action proceeded to trial, and (3) the individually named Plaintiffs, and the Class Members prevailed on every claim and contention asserted, the recovery by judgment could be greater than the recovery under the Settlement. However, Plaintiffs' Counsel considered that there was a substantial risk that, if the Action proceeded, Plaintiffs and the Class Members might not have prevailed on any or all of their claims. Plaintiffs' Counsel also considered the likelihood that Defendants would appeal any adverse rulings, which would, at a minimum, substantially delay any recovery and present a risk that such rulings would be reversed in Defendants' favor. Plaintiffs' Counsel also considered the risk that Defendants might not have the assets to satisfy a class judgment.

By Order dated April 19, 2019, the Court preliminarily approved the Class and Collective Settlement Agreement and ordered notice by mail. On May 1, 2019, Defense Counsel sent notices pursuant to the Class Action Fairness Act ("CAFA") to the Attorneys General for the States of New York, New Jersey, and Connecticut, as well as the United States Attorney General. On May 17, 2019, Defendant Sterling Home Care, Inc., the Class Administrator, mailed out notice of the class settlement to the class members.

**Persons Who Did not Receive Notice and Opt-Outs Have been Removed from the Class**

The notices mailed to the following 24 class members were returned as undeliverable with no forwarding address: Juliet Obeng, Caudroya Smith, Marion Desouza, Melissa Jeudy, Jennipher Agymang, Maritha Njoku, Deborah Opoku, Bendjie Fonfrel, Kimisha Scarlett-Williams, Faustina Azameti, Adris Wright, Sharon Reid, Sandra Davis, Hyacinth Clarke, Patricia Smith, Nancy Agyapong, Sharon Okeyo, Bruce Winsome, Fatoumata Diallo, Yula Deyounge,

3

Michelle Bascomb, and Benjamin Boateng.  In response to the notice, the following 2 class members opted out of the settlement: Verona Dixon and Kathleen Turner.

No Class Member has served or filed an objection to the Settlement.  The original settlement equal to $342,699.41 has been reduced by $11,826 to $330,873.63 after the removal of the settlement amounts applicable to the persons who did not receive notice.

## II.      TERMS OF SETTLEMENT

Class Action Members subject to this provision concerning class action treatment under F.R.C.P. Rule 23 consist of all individuals employed by STERLING HOME CARE, INC. on or between January 1, 2015 and October 1, 2015 whose paystubs show that they worked more than 40 hours in at least one work week (the "Class").  The Class includes all collective action plaintiffs who filed consent-to-join forms to opt-in to this Litigation.

Defendants agree to pay a total settlement amount of 330,873.41 ($342,699.41 reduced by $11,826 applicable to class members who did not receive notice or opted-out)  to settle the claims of the Class, the Collective and the Named Plaintiff.  The payment amounts shall be allocated as described in the Settlement Agreement (*See* Exhibit D to the Settlement Agreement) and shall be allocated to Plaintiffs based on their overtime hours worked on or between January 1, 2015 and October 1, 2015 times their blended overtime rate per hour (calculated by dividing the total amount paid [excluding overtime premium pay] by the total hours worked during each pay period).   After arm's length negotiation, settlement amounts were reached.  The settlement finally reached was reached as a compromise.  The Settlement is fair because it constitutes the unpaid overtime owed to the Plaintiff Class, and it accounts for the risks that the Named Plaintiff and the Class faced in light of defenses raised by Defendants.

Defendants have agreed to pay Plaintiffs' Counsel an award of fees and expenses in the amount of $84,674.85 (expenses equal $1,526.40 and fees equal $83,148.45).  The agreed upon

fees equal 25.1% of the of the $330,873.41 Settlement Amount, excluding persons removed class members).

Defendants agree to pay the sum of $1,000 to the Named Plaintiff BEVOLYN DARBY, as an incentive award for her services as the class representative in this action and the aid she provided to Class Counsel in the Litigation.  Defendants also agree to pay Plaintiff DARBY $21,229.95 to settle her individual claims of not getting paid for 11 hours of each 24-hour shift worked.  The $21,229.95 equals about 65% of Plaintiffs full claim for the unpaid 11 hours of her 24 hour shifts (excluding punitive damages and interest).  The discount is reasonable given that Plaintiff at trial has the burden of proving that she did not get 8 hours of sleep and did not get three hours of meal breaks during the 24-hour shifts.   These payments do not diminish in any way the Named Plaintiff's recovery as a member of the Class Action Settlement Class.

In return for the above consideration, the Named Plaintiff has agreed to provide a full general release, and the Class Action Members who have received notice of the settlement who have not chosen to opt out ("Settlement Class Members"), will release only their claims for overtime pay during the period on or between January 1, 2015 and October 1, 2015.  The Settlement Agreement may be terminated by any party (a) if the Court declines to approve the Settlement Agreement or any material term of the Settlement Agreement or (b) if the claims of Plaintiffs who opt-out of the Settlement exceed $75,000.

III.     **ARGUMENT**

A.     **It Is Appropriate To Certify the Settlement Class for Purposes of the Settlement**

Certification of the Settlement Class is appropriate to effectuate a settlement of Plaintiff's and Settlement Class Members' claims against Defendants.  Indeed, the benefits of the

Settlement can be realized only through the certification of a Settlement Class, and the Supreme

Court of the United States has emphatically confirmed the viability of such settlement classes.

See e.g., Amchem Prods. v. Windsor, 521 U.S. 591 (1997).  So, too, have the federal appeals

courts.  See e.g., Carroll v. United Compucred Collections, Inc., 399 F.3d 620, 625-626 (6th Cir.

2005); In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions, 148 F.3d 283 (3d Cir.

1998); Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998).

      As Plaintiffs have detailed in Plaintiffs' motion for preliminary approval of the

Settlement, the Settlement Class readily meets the criteria of Rules 23(a) and 23(b)(3) of the

Federal Rules of Civil Procedure.  The Class is sufficiently numerous, the commonality

requirement also is easily met, as well as typicality.  The claims of the representative Plaintiff

and each of the Class Members is predicated on the alleged failure of Defendants to pay them

minimum, regular and/or overtime wages.  In order to prevail, therefore, the named Plaintiff and

each member of the Class will be required to make the same factual presentation and legal

argument with respect to the common questions of liability, regardless of the individual

circumstances which may affect their ability to prove individual causation and amount of

damages on an individualized basis.

      The adequacy requirement also is satisfied easily. The representative Plaintiff has

zealously pursued the claims against the Defendants for their alleged wrongful conduct.  Given

the identical aspects of claims among the Plaintiff and the Class Members set forth above, there

is no potential for conflicting interests in this action.  The Plaintiff possesses the same interests

and has suffered the same injury as other Class Members.  Plaintiff and Class Members are

seeking to vindicate identical interests.  At the same time, Class Counsel has diligently pursued

the interests of Plaintiff and the Class.  Class Counsel is a well regarded member of the legal

community, has broad experience in class action lawsuits and, in particular, has broad experience

6

in complex wage and hour litigation.

The predominance requirement of Rule 23(b)(3) is met as well.  For example, all of
Plaintiff's and Class Members' claims for compensatory relief are founded upon a common legal
theory of Defendants' failure to comply with the NY Labor Law and/or the FLSA.  Here, where
Plaintiff's and the Class Members' claims are premised upon their employment by Defendants
and alleged labor law violations, and where each has the opportunity to obtain the same type of
relief under the Settlement or to exercise the right to pursue litigation outside the Settlement,
there can be little doubt that predominance is sufficiently demonstrated and that certification is
appropriate.

Finally, it is clear that resolution of the Plaintiff's and Settlement Class Members' Claims
by class wide settlement is superior to individual adjudication of the Settlement Class Members'
claims for compensatory relief.  In particular, the Settlement provides Plaintiff and Settlement
Class Members with an ability to obtain predictable, certain and defined compensatory relief
promptly and contains well defined administrative procedures to assure due process in the
application of the Settlement to each individual claimant including, the right to "opt-out."  By
contrast, individualized litigation carries with it great uncertainty, risk and costs, and provides no
guarantee that the injured Plaintiff and Settlement Class Members will obtain necessary and
timely compensatory relief at the conclusion of the litigation process.  Settlement also will
relieve judicial burdens that would be caused by repeated adjudication of the same issues in
many individualized trials against Defendants.

For these reasons, and given that the Court already has conditionally certified the
Settlement Class, the Court should finally certify the Settlement Class.

**B.**   <u>The Settlement Meets the Standards for Judicial Approval of Class Action Settlements and Should Be Approved.</u>

The Settlement before this Court, reached through arms-length negotiations, resolves this dispute and provides Settlement Class Members with relief that potentially equals or surpasses what could be achieved through trial.  The Settlement should therefore be readily approved by the Court, especially considering the well-settled policy favoring the settlement of cases. <u>Williams v. First Nat'l Bank</u>, 216 U.S. 582, 585 (1910) ("[c]ompromises of disputed claims are favored by the courts.").  This policy applies with particular force to class-action lawsuits, the complexity and expenses of which impose special burdens borne by the judicial system as well as the litigants.  <u>In re United States Oil and Gas Litig.</u>, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); <u>see</u> <u>also</u>, <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").  Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice…" <u>Behrens v. Wometco Enterprises, Inc.</u>, 118 F.R.D. 538 (S.D. Fla. 1988) <u>aff'd</u>, 899 F.2d 21 (11th Cir. 1990).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class-action settlement.  "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find the settlement is fair, adequate and reasonable and not the product of collusion between the parties."  <u>Cotton</u>, 559 F.2d at 1330.  In reaching this determination, the "inquiry should focus upon the terms of the settlement," together with "an analysis of the facts and the law relevant to the proposed compromise."  <u>Id.</u>  Specifically, the settlement terms should be compared "with the likely rewards the class would have received

8

following a successful trial of the case," subject to qualifications.  Id.

"First, the courts, including those in this Circuit, have continuously stressed that it should not be forgotten that compromise is the essence of settlement."  Id.  As a result, in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, "the trial judge ought not try the case in the settlement hearings," nor should the court "make a proponent of a proposed settlement justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained…."  Id.  To the contrary, "the court must be mindful that inherent in compromise is a yielding of absolutes and an abandonment of highest hopes." Ruiz v. McKaskle, 724 F.2d 1149 (5th Cir. 1984); see also, Young v. Katz, 447 F.2d 432, 433 (5th Cir. 1971) (explaining that a mini-trial on the underlying merits for purposes of approving a settlement "would emasculate the very purpose for which settlements are made").

Second, courts have consistently stressed that in evaluating a settlement in light of the risk of continued litigation, the district court "is entitled to rely upon the judgment of experienced counsel for the parties."  Cotton, 559 F.2d at 1330; See also Behrens, 118 F.R.D. at 539 ("The Court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel").  "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." In re King Res. Co. Sec. Litig., 420 F. Supp. 610, 625 (D.Colo. 1976).  Third, the courts have stressed that "litigants should be encouraged to determine their respective rights between themselves," and that "[t]here is an overriding public interest in favor of settlement."  Cotton, 559 F.2d at 1331.

Finally, in considering the merits of the Settlement, the Court should take into account practical considerations such as the complexity of the case and the expense and likely duration of the litigation.  Susquehanna Corp. v. Korholz, 84 F.R.D. 316, 322 (N.D. Ill.1979).  One of those

9

practical considerations is the vagaries of litigation and the benefits of an immediate recovery as compared "to the mere possibility of relief in the future, after protracted and expensive litigation." In re King Resources, 420 F. Supp. at 625. In this respect, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." Id.

### C.    Likelihood of Success at Trial

Class Counsel has built a case with a good likelihood of success at trial. However, as with any litigation, especially class action litigation, were this case to proceed to trial there is the risk and uncertainty that Plaintiff and the Class might not prevail on their claims and/or that their claims would not survive an appeal. Therefore, consideration of this factor supports the approval of this Settlement. Furthermore, it would take a significant amount of time to reach the trial, and appeals would inevitably follow, causing additional delay.

### D.    The Range of Possible Recovery and the Recovery Achieved

"A court must balance the amount offered in settlement against the strength of the class action suit." Whitford v. First Nationwide Bank, 147 F.R.D.135,143 (W.D.Ky. 1992). Indeed, "[O]ne of the most important factors in assessing the fairness of a settlement agreement is the strength of the plaintiff's case on the merits balanced against the relief offered in the settlement." Manners v. American General Life Ins. Co., 1999 U.S. Dist. LEXIS 22880 AT * 55 (M.D. Tenn., Aug. 11, 1999) (Quoting Berry v. School Dist. of City of Benton Harbor, 184 F.R.D. 93,98 (W.D. Mich. 1998). In making this determination, the Court should make only a "limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." Id. (quoting Ressler v. Jacobson, 822 F. Supp. 1551,1553 (M.D. Fla. 1992).

Here, the only claims being released are the claims for improper overtime pay based on the hours listed on the paystubs. The Settlement equals a recovery of the full unpaid overtime

owed to the class.  See letter to Court dated April 17, 2019 explaining calculation of class

settlement amounts.  The settlement does not include interest or liquidated damages because

there are district court decisions indicating that overtime was not required to be paid to health

aides prior to October 13, 2015 which created a risk that the class might recover no monies if

they litigated. Thus, the settlement is reasonable given the risk that the Defendants may prevail

on the law, in which case the class members would not recover any money for their overtime

claims.

There is no fixed point above or below which a settlement is or is not fair.  Indeed,  "[t]he

fact that a proposed settlement may only amount to a fraction of the potential recovery does not,

in and of itself, mean that the proposed settlement is inadequate; there is reason why a

satisfactory settlement could amount to a hundredth or even a thousandth part of a single percent

of the potential recovery."  Id. at *57 (quoting TBK Partners, Ltd. V. Western Union Corp., 675

F. 2d 456, 463-64 (2d Cir. 1982).

Here, as in any litigation, Plaintiffs and the Class have no guarantee of success were they

to pursue their claims to trial and there is a significant risk that a large judgment might result in a

bankruptcy filing by defendants.  Here, the significant monetary benefit to Settlement Class

Members through the Settlement Fund provides them with a significant remedy for the alleged

labor law violations, and provides for payment in installments with final payment on or before

June 1, 2019 to permit Defendants to use their earnings to accumulate monies to pay the

settlement.

Settlement amounts below the claims sought have been approved by Courts, because the

simple fact the proposed settlement is a small fraction of the claimed damages is not indicative of

an insufficient compromise.  See e.g., Lazy Oil Co. v. Witco Corp., 95 Fed. Supp. 2d 290, 319

(W.D.  Pa. 1997) (court approved settlement amounting to 5.35 percent of damages); In re Four

Seasons Sec. Laws Litig., 58 F.R.D. 19,36,37 (W.D. Okla. 1972) ($8 million settlement approved, although claims exceeded $100 million); Cagan v. Anchor Sav. Bank FSB, 1990 U.S. Dist. LEXIS 11450 at *5, (E.D.N.Y., May 17, 1990) (approving $2.3 million class settlement over objections that "best possible recovery would be approximately $121 million"); Behrens, 118 F.R.D. at 542.  ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise."), aff'd, 899 F. 2d 21 (11th Cir. 1990).

        **E.**    **The Complexity, Expense, and Duration of the Litigation**

        The complexity, expense, and likely duration of the litigation are major factors to be considered in evaluating the reasonableness of a settlement.  "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F. 3d 768, 812 (3d Cir. 1993).  It is undeniable that were this litigation to continue, Defendants would actively and aggressively litigate this action, conceding nothing, and asserting their various affirmative defenses.  Thus, the costs of proving the case against the Defendants would be substantial, and absent final approval of the Settlement, these costs would quickly escalate.

        Accordingly, the complexity and expense of this litigation, and the expected duration of advancing the case to trial and through appeal in the absence of settlement weigh heavily in favor of final approval of the Settlement.  See e.g., In re Prudential. ("The court found that litigation would require expensive and time consuming discovery, would necessitate the use of several expert witnesses, and would not be completed for years.  Consequently, the court concluded this factor weighed in favor of settlement.  We agree.").  The proposed Settlement grants Class Members timely relief without their having to endure the risk, complexity, duration and expense inherent in continuing this action.  Accordingly, this factor is satisfied.

**F.**     <u>**The Substance and Amount of Opposition to the  Settlement**</u>

This factor "attempts to gauge whether the members of the class support the settlement." <u>See e.g.</u>, <u>In re Prudential</u> 148 F. 3d at 318.  Importantly, Settlement Class Members' due process rights were fully protected, as their right to opt out and object of the Settlement was made a conspicuous part of the Settlement Agreement and Notice.  However, only two (2) Settlement Class Members opted out of the Settlement, suggesting that Settlement Class Members view the Settlement Agreement as eminently fair, reasonable and adequate.  In addition, there have been no objections.  When determining the measure of the class' reaction to a settlement, the Court must look to the number and "vociferousness of the objectors." <u>In re GM Trucks</u>, 55 F. 3rd at 812.  <u>See</u>, <u>In re Orthopedic Bone Screw Products Liab. Litig.</u>, 176 F. R. D. 158, 185 (E.D. Pa. 1997) ("What is meaningful in this regard is that the relatively low objection rate militates strongly in favor of approval of the settlement.").  Accordingly, this factor is readily satisfied.

**G.**     <u>**The Stage of Proceedings at Which Settlement Was Achieved**</u>

This factor requires the court to analyze the stage of the proceedings to determine "the degree of case development that …counsel have accomplished prior to the settlement." <u>GM Trucks</u>, 55 F. 3d at 813.  "In assessing this factor, the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." (citations omitted).  Essentially, the Court must ensure that the settlement agreements are not the product of a quick and uninformed decision making process.  <u>Id.</u>

This factor is unequivocally satisfied given Class Counsel's activities prior to entering into the Settlement Agreement.  During the period leading up to the signing of the Settlement Agreement, Plaintiffs' Counsel, among other things, communicated with the Plaintiffs about the nature of the litigation, and analyzed the evidence adduced during pretrial proceedings and settlement negotiations.

13

Indeed, Class Counsel's efforts justify a finding that the parties had more than an "adequate appreciation of the merits of the case before negotiating." In re Prudential 148 F. 3d at 319 (citing GM Trucks, 55 F.3d at 813). Thus, the concern noted in Amchen – concerning the vulnerability of a settlement claim – where the parties had not been put to the test of a vigorous adversarial process in shaping their position at the bargaining table is not at issue here. Amchen Prods. V. Windsor, 521 U.S. 591 at 601, 620 (1997). In this case, the adversarial process was stretched to its maximum throughout the litigation and negotiation period. Because the Settlement was reached after painstaking work and analysis, this factor is met.

### H.    The Notice Program Approved by the Court was Effectuated

The Administrator met all of the obligations with regard to Notice as set forth in this Court's Order of Preliminary Approval and the Settlement Agreement. Under the program approved by the Court and carried out by the parties, the Notice given was the best means of Notice that was practicable under the circumstances.

The Administrator mailed the Notice of Settlement to class members on May 17, 2019. See Declaration of Claims Administrator. Twenty-four (24) class member notices were returned and could not be mailed and thus these class members were removed from the class. Two class members, Verona Dixon and Kathleen Turner, excluded themselves from the Class and thus they have been removed from the Class as well. See Rand Declaration. Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), defense counsel sent CAFA notices, by First Class Mail on May 1, 2019, more than ninety (90) days before the final approval hearing, to the following authorities: the Attorneys General for the States of New York, New Jersey, and Connecticut, as well as the United States Attorney General. See Defense Counsel Declaration.

## IV.   CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED

Class Counsel requests that the Court award attorney's fees and expenses set forth by the parties in the Settlement Agreement.  As enumerated above, subject to Court approval, Defendants do not object to Plaintiffs' application for fees and costs to William C. Rand, Esq. in his capacity as Class Counsel in the amount of $84,674.85 (expenses equal $1,526.40 and fees equal $83,148.45).

The issue of how to compensate attorneys who have been successful in obtaining a common fund for the benefit of injured class members has been fought out for a long time and in many courts. The issue seems to have been put to rest after the Supreme Court's pronouncement in Blum v. Stenson, 465 U.S. 886,900 n.16 (1984), which declared that "under the 'common fund doctrine…a reasonable fee is based on a percentage of the fund bestowed on the class.'" This was followed in the seminal case on this issue in In re General Motors Corp. Liab. Litig., 55 F. 3d 768, 821-22 (3d Cir. 1995) and subsequently followed in this circuit in the often cited case of Goldberger v. Integrated Resources, Inc. 209 F. 3d 43,50 (2d Cir. 2000).

In wage-and-hour class actions, courts employ either a "percentage of the fund" or lodestar approach to determining appropriate fees, but "[t]he trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one." Matheson v. T-Bone Rest., LLC, 2011 WL 6268216, at *4 (S.D.N.Y. Dec. 13, 2011) (citing McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010)).  Moreover, courts in this Circuit have "routinely granted" requests for one-third of the fund.  See Johnson v. Brennan, No. 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (collecting cases).

Additionally, Goldberger states that fees in such cases must be "reasonable" and "based on scrutiny of the unique circumstances of each case." Goldberger 209 F. 3d at 47,53. Goldberger also establishes six factors a reviewing court should consider in evaluating what

15

constitutes a reasonable fee: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation…; (3) the risk of the litigation; (4) the quality of the representation [measured by result]; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" Id. at 50 (citation omitted). Under the lodestar method, in order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials. See Chambless v. Masters, Mates, & Pilots Pension Plan, 885 F. 2d 1053, 1058 (2d Cir. 1989). Furthermore, a reasonable hourly rate is a rate "in line with … prevailing [rates] in the community for similar services by lawyers of reasonable comparable skill, expertise and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); Chambless, 885 F. 2d at 1058-59. A district court can also use its knowledge of the relevant market when determining the reasonable hourly rate. See Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F. 2d 407, 409 (2d Cir. 1987).

The Second Circuit also stated that district courts should not reduce the award of attorney's fees simply because an attorney is a solo practitioner. McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91 at 98 n. 6 (2d Cir. 2006). In determining the relevant "market" a court may look to rates charged by those in a similar professional situation, including looking to the rates charged by large or medium-sized law firms. The rationale behind this practice is that a client represented by a medium-sized firm typically pays less than a large-sized firm with higher overhead costs. Overhead costs should not determine which attorneys should be awarded a higher or lower fee. Some highly skilled attorneys decide not to affiliate themselves with a firm for various reasons and choose to be solo practitioners. Moreover, the inquiry into the reasonable hourly rate should focus on the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." Blum, 465 U.S. at 895 n.11; Chambless, 885 F. 2d at 1058-59, McDonald.

16

Under the Fair Labor Standards Act ("FLSA") and New York State Labor Law, a prevailing plaintiff is entitled to receive an award of reasonable attorneys' fees and costs from defendants. See 29 U.S.C. §216 (b), N.Y. Lab. Law §198.  Here, Plaintiffs are prevailing plaintiffs and should be awarded reasonable attorneys' fees.[1]

 In determining the reasonable hourly rate, this Court must look to the current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Gierlinger v. Gleason, 160 F. 3d 858, 882 (2d Cir. 1998). Because Plaintiffs' Counsel's office is located in Manhattan, the Court should look to the community of Manhattan labor and employment law class action litigation attorneys for comparable market rates.

This lodestar method of compensating attorneys has also been followed in this district. Spann v. AOL Time Warner, 02 Civ. 8238 (DLC) (2005 S.D.N.Y.); In re Worldcom, Inc. ERISA Lit., 339 F. Supp. 2d 561 (S.D.N.Y. 2004); In re Alloy Inc. Sec. Lit. 03 Civ. 1597 (S.D.N.Y, 2004); Strougo v. Bassini, 258 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); Steiner v. Williams, 99

---

[1] The case at bar is a fee shifting employment law case and, as such, any rule of proportionality that would tie an attorney fee award to the amount of damages recovered has been rejected by the Second Circuit.  See Grant v. Martinez, 973 F. 2d 96,101 (2d Cir. 1997), Orchano v. Advanced Recovery, Inc., 107 F. 3d 94, 98-99 (2d Cir. 1997).  In Quartino v. Tiffany & Co., 166 F. 3d 422, (2d Cir. 1999), the Second Circuit stated that "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."  See City of Riverside v. Rivera, 477 U.S. at 575 (plurality opinion) ("Congress did not intend for fees in civil rights cases… to depend on obtaining substantial monetary relief.").  Were we to adopt the "billing judgment" approach that the district court advocates, we would contravene that clear legislative intent by relinking the effectiveness of a civil rights plaintiff's legal representation solely to the dollar value of her claim.  As a near-unanimous Supreme Court  reiterated in Blanchard v. Bergeron, 489 U.S. 87, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989), "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," id. at 96 (quoting Rivera, 477 U.S. at 574), and "we are unwilling to hold that the plaintiff's attorney should calculate the value of her client's rights in just those 'monetary terms.'"  166 F. 3d at 426.
　　　　Proportionality has been rejected as a legitimate factor for the court's consideration in assessing an appropriate fee award.  Cowan v. Prudential, 728 F. 2d 522 (2d Cir. 1991), Dunlap-McCuller v. Riese Org., 980 F. 2d 153 (2d Cir. 1992), Orchano v. Advanced Recovery, Inc., 107 F. 3d 94 (2d Cir. 1997), Quartino v Tiffany & Co., 166 F. 3d 422 (2d Cir. 1999).

17

Civ. 10186 (JSM), 2001 WL 604035 (S.D.N.Y. 2001); In re Am. Bank Note Holographics, Inc.
Sec. Litig., 127 F. Supp. 2d 418, 431 (S.D.N.Y. 2001); In re NASDAQ Market-Makers Antitrust
Litig., 187 F.R.D. 465, 484 (S.D.N.Y. 1998).

Nevertheless, there is strong judicial support for the percentage method as there is the
widespread recognition that it does away with "the needless complications and dubious merits of
the lodestar approach." Strougo, 258 F. Supp. 2d at 361. See also, In re Union Carbide Corp.
Consumer Prods. Bus. Sec. Litig., 724 F. Supp 160 (S.D.N.Y. 1989).  In contrast to the lodestar
method, "[t]he percentage method directly aligns the interest of the class and its counsel and
provides a powerful incentive for the efficient prosecution and early resolution of litigation,
which clearly benefits both litigants and the judicial system." In re Lloyd's Am. Trust Fund
Litig., No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002); see also, In re
Twinlab, Corp. Sec. Litig. 187 F. Supp 2d 80, 85 (E.D.N.Y. 2002) ("Courts favor the percentage
of the fund method because lodestar 'created an unanticipated disincentive to early settlements,'
tempted lawyers to run their hours, and 'compel[ed] district courts to engage in a gimlet-eyed
review of line-item fee audit.'") (citations omitted). It also permits the judge to focus on the
quality of the lawyers' efforts rather than on how many hours they billed. NASDAQ, 187 F.R.D.
at 485.  "In addition, the percentage method is consistent with and, indeed, is intended to mirror,
practice in the private marketplace where contingent fee attorneys typically negotiate percentage
fee arrangements with their clients." Strougo, 258 F. Supp. 2d at 362; see also, In re RJR
Nabisco, Inc. Sec. Litig., No. 88 Civ. 7905 (MBM), 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24,
1992) ("[w]hat should govern such awards is not the essentially whimsical view of a judge, or
even a panel of judges, as to how much is enough in a particular case, but what the market pays
in similar cases").  No matter which method is chosen, the fees awarded in common fund cases
must be "reasonable" and "based on scrutiny of the unique circumstances of each case."

<u>Goldberger</u>, 209 F.3D at 47, 53.        Additionally, regardless of the method chosen, "district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" <u>In re Arakis Energy Corp. Sec. Litig.</u>, at *26 (quoting <u>Goldberger</u>, 209 F.3d at *50).

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." <u>Teachers' Ret. Sys. v. A.C.L.N., Ltd.</u>, Master File No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004). The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

<u>Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted); <u>Am.Bank Note Holographics</u>, 127 F. Supp. 2d at 432-433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); <u>In re Prudential Sec. Inc. Ltd. P'ships Litig.</u>, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) (Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Class Counsel in prosecuting this class action. Here, Class Counsel vigorously negotiated a very substantial settlement for the class, and undertook this action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this action without a guarantee of compensation or even recovery of out-of-pocket expenses. Here, the

19

Plaintiffs' case hinged on an analysis - and ultimately a determination - regarding the federal regulation requiring home health aides be paid full overtime. A substantial risk is that this Court could have found that the regulation commenced only after the D.C. Circuit's reversal of the District Court's Order vacating the regulation. This type of potential finding required a realistic assessment of the risk here by Plaintiffs' counsel. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Class Counsel has not been compensated for any time or expenses since this case began. Moreover, Class Counsel would not have received any compensation or even reimbursement of expenses had this case not been successful. Finally, the class representative did not simply cede to Defendants' first settlement offer. To the contrary, Class Counsel vigorously negotiated a very substantial settlement for the class.

Class Counsel in his role in pursuing this action and negotiating for compensation to Class Members, has provided tremendous benefits to the Class. For this effort, he should be rewarded. See Goldberger, 209 F.3d at 51 ("'There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'"); RJR Nabisco, 1992 WL 210138, at *7 ("The prospect of handsome compensation is held out as an inducement to encourage lawyers to bring such suits.'"), quoting Dolgow v. Andersen, 472, 494 (E.D.N.Y. 1968). Respectfully, therefore, the class representative asks that her request for attorney's fees and expenses be granted.

## A.    Negotiated Attorney's Fee Agreements Are Favored In Class Action Settlements

Rule 23(h) of the Federal Rules of Civil Procedure states: "In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties." Fed. R. Civ. P. 23(h) (emphasis supplied).

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. "A request for attorney's fees should not result in a second major litigation.

Ideally, of course, litigants will settle the amount of a fee." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see also, In re MDC Holdings Sec. Litig., [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement… , including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants."); M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 829 (D. Mass. 1987). ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves.") Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.")

In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

Malchman v. Davis, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986).

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In In re Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the

function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Id. "Markets know market values better than judges do." Id. at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." Id. at 572. Here, such a negotiation was feasible, and was conducted. The fee was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might award if the matter were litigated.

Thus, the negotiated fee is entitled to a presumption of reasonableness.

### B.    The Quality Of Representation

Class Counsel was well-qualified from the outset to pursue this case. His professional background, qualifications and experience are set forth in the declaration of William C. Rand, Esq. submitted herewith and with the Preliminary Application. As shown by the declaration, Class Counsel has a great deal of experience in the prosecution and successful resolution of complex class actions, many involving the FLSA and NY Labor Law.

Courts routinely recognize the experience of class action counsel in determining the reasonableness of a fee award. See In re Lupron® Mktg. & Sales Practices Litig., No. 01-cv-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14 (D. Mass. Aug. 17, 2005). In addition, the quality of representation is commonly measured by the result obtained. Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

Class Counsel's decision to avoid additional litigation costs and settle at this juncture also supports a finding of effective representation. A business as usual approach to litigation, with motion practice and protracted discovery skirmishing would have resulted in cost and delay, but

would not likely have resulted in greater benefits to the Settlement Class.  As a result, the

Settlement Class was well-served by Class Counsel's decision to engage in early settlement

discussions.  See McBean v. City of New York, 233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS

5003, at *17-18 (S.D.N.Y. 2006) (where all parties "agree upon the basic facts as they relate to

the plaintiff class…class counsel's decision to forgo additional discovery in the hopes of

minimizing costs and achieving a quick recovery for their clients…falls within the bounds of

'effective representation'").

Finally, the quality of opposing counsel is also an important factor for the Court to

consider in evaluating the quality of services provided by Class Counsel. See e.g., In re Warner

Comms. Sec. Litig., 618 F. Supp. 735, 749 (S.D.N.Y. 1985).  Defendants were represented by

Kaufman Borgeest & Ryan LLP, a prestigious law firm that represents management in labor and

employment matters, whose lawyers negotiated each issue, phrase and nuance contained in the

settlement.  As the Court stated in In re Copley Pharmaceutical, Inc., 1 F. Supp. 2d 1407, 1413-

14 (D. Wy. 1998), "the skill required to perform the legal service presented by the instant case

was great, particularly where class counsel were faced with opposing counsel of such high

quality."  Plaintiffs' counsel has proven equal to the task of working effectively and efficiently

opposite Defendants' skilled counsel.

### C.   The Agreed-Upon Fee Is Reasonable Under a Percentage/Lodestar Cross-Check Analysis

In the instant action, the requested fee award of $83,148.45 represents 25.1% of the

$330,873.41 settlement obtained for the Class Members.

Class Counsel undertook this case on a contingency fee basis, committed substantial

resources to its prosecution, and risked time and effort with no ultimate guarantee that they

would be compensated for those efforts.  See Cohan v. Columbia Sussex Mgmt., LLC, 2018 U.S.

23

Dist. Lexis 170192 (Sept. 28, 2018 E.D.N.Y.) (awarding fees of $980,633.19 equal to 30% of the settlement fund).

Traditionally, in FLSA settlement cases, attorneys' fees are awarded under the "percentage of the fund" method and one-third of the total settlement is normally considered a reasonable fee. See Zhi Li Zhong v. Rockledge Bus Tour Inc., 18 Civ. 454 (RA), 2018 U.S. Dist. LEXIS 131829, 2018 WL 3733951 at *4 (S.D.N.Y. Aug. 6, 2018) (Abrams, D.J.) ("one-third of the net settlement amount . . . is an amount routinely approved under the percentage method"); Coleman v. DeFranco Pharmacy, Inc., 17 Civ. 8340 (HBP), 2018 U.S. Dist. LEXIS 129140, 2018 WL 3650017 at *3 (S.D.N.Y. Aug. 1, 2018) (Pitman, M.J.) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit.").

"The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) (internal quotation omitted). By contrast, the lodestar method as characterized by the Second Circuit "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits." Id. (internal quotation and brackets omitted). In the instant matter, the requested attorneys' fees are reasonable under both the percentage method and the lodestar method.

In common fund cases, the Second Circuit favors awarding fees according to the "percentage of the fund" method.  Viewing the fees here as a percentage of the Settlement demonstrates that the requested fee award falls well within the range of reasonable fees approved by the courts in this Circuit. See, e.g., Kochilas v. Nat'l Merchant Servs., Inc., No. 1:14-cv-

24

00311, 2015 U.S. Dist. LEXIS 135553, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015)

(finding class counsel's request in FLSA/NYLL case for one-third of the Settlement Fund to be

reasonable and consistent with class litigation in the Second Circuit) (collecting cases); Massiah

v. MetroPlus Health Care Plan Inc., No. 11-cv-05669, 2012 U.S. Dist. LEXIS 166383, 2012 WL

5874655, at *6 (E.D.N.Y. Nov. 20, 2012) (awarding class counsel in FLSA and NYLL case 30%

of the $4,040,000 Settlement Fund); Willix v. Healthfirst, Inc., No. 07 Civ. 1143, 2011 U.S. Dist.

LEXIS 21102, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding class counsel 33 1/3

% of the $7,675,000 Settlement Fund as fair and reasonable); Odom v. Hazen Transport, Inc.,

275 F.R.D. 400, 412 (W.D.N.Y. 2011) (attorneys' fees representing 32.6% of the total settlement

fund [*6] held to be reasonable); Stefaniak v. HSBC Bank, USA, NA, No. 1-05-CV-7205, 2008

U.S. Dist. LEXIS 53872, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (finding fee

awards of 33% of the settlement fund typical of class action settlements in the Second Circuit)

(collecting cases); Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y.

2002) (awarding attorneys' fee to class counsel of 33% of $11.5 million Settlement Fund found

to be fair and reasonable).

    As this Court has found previously,

> In this Circuit, courts typically approve attorneys' fees that range
> between 30 and 33 1/3 %. *See Guzman v. Joesons Auto Parts*, Case No. 11-cv-
> 4543(ETB), 2013 U.S. Dist. LEXIS 83342, 2013 WL 2898154, at *4 (E.D.N.Y.
> June 13, 2013) (collecting cases); **[*7]** *see also*, *Meza v. 317 Amsterdam Corp.*,
> No. 14-cv-9007, 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2
> (S.D.N.Y. Dec. 14, 2015) ("[C]ourts regularly approve attorney's fees of one-
> third of the settlement amount in FLSA cases."); *Silverstein v. AllianceBernstein
> LP*, Case No. 09-cv-5904, 2013 U.S. Dist. LEXIS 179734, 2013 WL 6726910,
> at *9 (S.D.N.Y. Dec. 20, 2013); *Beckman v. KeyBank*, *N.A.*, 293 F.R.D. 467,
> 481 (S.D.N.Y. Apr. 29, 2013).

*Reyes v. 1944 First Ave. Deli Co., LLC*, 2017 U.S. Dist. Lexis 189177, at *6-7 (S.D.N.Y. Nov.

14, 2017) (J. Forrest).  Thus, the fee in this case is reasonable on a percentage basis.

The fee is also reasonable on a lodestar basis as Class counsel's time spent on the case to date is 214.9 hours which at Plaintiff's $450 per hour rate equals a lodestar of $96,705 which constitutes a multiple of less than one. *See Villanueva v. 179 Third Ave. Restaurant Inc.*, 2018 U.S. Dist. Lexis 116379 at *8 (S.D.N.Y.  July 12, 2018) (J. Nathan) (where lodestar multiplier is less than one, fee is deemed reasonable).  See time records attached as Exh. C to the Rand Declaration. Moreover the fee represents a reasonable hourly rate of $386.92 (fee of $83,148.45/214.9 hours)  "Courts regularly award lodestar multipliers from two to six times lodestar." Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (citing In re Lloyd's Am. Trust Fund Litig., 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (stating that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y.2002) (explaining that the "modest multiplier of 4.65 is fair and reasonable"); In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 489 (S.D.N.Y.1998) (awarding multiplier of 3.97 times lodestar)); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), aff'd, 66 F.3d 314 (3d Cir. 1995); In re RJR Nabisco, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar).

The rate of $450 per hour for the lodestar check is reasonable given the complexity of the action.  *See Douglas v. Spartan Demolition Co. LLC*, 2018 U.S. Dist. LEXIS 163387 (Sept. 21, 2018 S.D.N.Y.) (finding $450 per hour reasonable rate for the work of attorney William C. Rand); *Siegel v. Bloomberg L.P.*, 13 Civ. 1352 (DF), 2016 U.S. Dist. LEXIS 38799, 2016 WL 1211849 at *5-*6 (S.D.N.Y. Mar. 22, 2016) (Freeman, M.J.) (awarding a $505 hourly fee to an attorney with 22 years of experience); *Velandia v. Serendipity 3, Inc.,* 2018 U.S. Dist. Lexis 116594 (July 12, 2018 S.D.N.Y.) (In restaurant case, "the "court stated that it "agrees that $500

per hour is an appropriate hourly rate for Mr. Pechman in this FLSA action."); *see Cohan v. Columbia Sussex Mgmt.., LLC*, 2018 U.S. Dist. Lexis 170192 at *8 (Sept. 28, 2018) ("The requested fees are also meant to compensate Class Counsel for time that will be spent administering the settlement into the future.").

In assessing the lodestar for cross-check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." Goldberger, 209 F.3d at 50. Instead, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." Id. Here, approval of the agreed-upon fee will not result in an excessive multiplier.

In sum, the attorneys' fees requested are reasonable under the percentage or lodestar analysis and thus should be approved.

### D. Class Counsel's Expenses Were Reasonably and Necessarily Incurred

In addition to the time he spent, Plaintiffs' counsel incurred $1,526.40 in costs and expenses in the pursuit of this litigation. See Rand Declaration. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged their clients." Hicks v. Morgan Stanley & Co., 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *29 (S.D.N.Y. Oct. 24, 2005). The declaration of Plaintiffs' Counsel describes these expenses by category. These expenses were reasonably and necessarily incurred in the prosecution of this action. Accordingly, Class Counsel respectfully requests that the Court award reimbursement of these expenses in full.

## V. THE INCENTIVE AWARD AND INDIVIDUAL SETTLEMENT FOR THE NAMED PLAINTIFF IS REASONABLE

Class Counsel requests approval of a modest incentive award to the named Plaintiff, in the amount of $1,000. Defendants do not oppose this award as provided by the Settlement Agreement. "Incentive awards are not uncommon in class action cases and are within the

discretion of the court." <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174,187 (W.D.N.Y. 2005).
Based on Class Counsel's experience, the amounts requested here are consistent with or below
the amounts typically awarded in similar litigation. <u>See</u> <u>Fears v. Wilhelmina Model Agency, Inc.</u>,
No. 02 Civ. 4911, 2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005) (collecting cases
illustrating a range of incentive awards and approving an award of $25,000). The incentive
award requested is justified in light of the plaintiff's willingness to devote her time and energy to
prosecuting a representative action and reasonable in consideration of the overall benefit
conferred on the Settlement Class and should be approved. <u>See</u> <u>Dornberger v, Metropolitan Life</u>
<u>Ins. Co.</u> 203 F.R.D. 118,125 (S.D.N.Y. 2001). <u>See</u> e.g., <u>Spann v. AOL Time Warner, Inc.</u>, 02
Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *27 (S.D.N.Y. June 7, 2005) (granting an incentive
award of $10,000 for each named plaintiff). Here, the Named Plaintiff spent numerous hours
working with Plaintiff's Counsel to prosecute and settle the litigation. Accordingly, the
incentive bonus is reasonable. Defendants also agree to pay Plaintiff Bevolyn Darby $21,229.95
to settle her individual claims of not getting paid for 11 hours of each 24-hour shift worked. The
$21,229.95 equals about 65% of Plaintiffs full claim for the unpaid 11 hours of her 24 hour shifts
(excluding punitive damages and interest). The discount is reasonable given that Plaintiff at trial
has the burden of proving that she did not get 8 hours of sleep and did not get three hours of meal
breaks during the 24-hour shifts.

## VI.    CONCLUSION

For the foregoing reasons, Class Counsel and Defense Counsel respectfully ask that the

Court grant this application.

Dated: New York, New York
       August 20, 2019

                              LAW OFFICE OF WILLIAM COUDERT RAND

                              s/William C. Rand

                              _____
                              William Coudert Rand, Esq. (WR-7685)
                              *Attorney for Plaintiffs*, Individually,
                              and on Behalf of All Other Persons Similarly Situated
                              501 Fifth Ave., 15th Floor
                              New York, New York 10017
                              Tel: (212) 286-1425